| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Daniel J. Weintraub, State Bar No. 132111<br>James R. Selth, State Bar No. 123420<br>Crystle J. Lindsey, State Bar No. 281944<br>WEINTRAUB & SELTH, APC<br>11766 Wilshire Boulevard, Suite 1170<br>Los Angeles, CA 90025<br>Telephone: (310) 207-1494<br>Email: crystle@wsrlaw.net<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* Debtor in Possession Neumedicines, Inc. | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br><br>NEUMEDICINES, INC. | CASE NO.: 2:20-bk-16475-ER<br>CHAPTER: 11 |
|---|---|
| | **NOTICE OF MOTION FOR:**<br><br>MOTION APPROVING STIPULATION FOR ENTRY OF ORDER AUTHORIZING USE OF CASH COLLATERAL<br><br>*(Specify name of Motion)* |
| Debtor(s). | DATE: 09/02/2020<br>TIME: 10:00 am<br>COURTROOM: 1568<br>PLACE: United States Bankruptcy Court<br>255 E. Temple Street<br>Los Angeles, CA 90012 |

1. TO (*specify name*):  SECURED CREDITORS, 20 LARGEST UNSECURED CREDITORS, INTERESTED PARTIES

2. NOTICE IS HEREBY GIVEN that on the following date and time and in the indicated courtroom, Movant in the above-captioned matter will move this court for an Order granting the relief sought as set forth in the Motion and accompanying supporting documents served and filed herewith. Said Motion is based upon the grounds set forth in the attached Motion and accompanying documents.

3. **Your rights may be affected**. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012    Page 1    **F 9013-1.1.HEARING.NOTICE**

4. **Deadline for Opposition Papers:** This Motion is being heard on regular notice pursuant to LBR 9013-1. If you wish to oppose this Motion, you must file a written response with the court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than fourteen (14) days prior to the above hearing date.  If you fail to file a written response to this Motion within such time period, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

5. **Hearing Date Obtained Pursuant to Judge's Self-Calendaring Procedure:** The undersigned hereby verifies that the above hearing date and time were available for this type of Motion according to the judge's self-calendaring procedures.

Date:  08/05/2020

Weintraub & Selth, APC
Printed name of law firm

/s/ Crystle J. Lindsey
Signature

Crystle J. Lindsey
Printed name of attorney

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                    Page 2                          **F 9013-1.1.HEARING.NOTICE**

1  Daniel J. Weintraub, SBN 132111
   James R. Selth, SBN 123420
2  Crystle J. Lindsey, SBN 281944
3  **WEINTRAUB & SELTH, APC**
   11766 Wilshire Boulevard, Suite 1170
4  Los Angeles, CA 90025
   Telephone: (310) 207-1494
5  Facsimile:  (310) 442-0660
   Email: crystle@wsrlaw.net
6

7  [Proposed] General Bankruptcy Counsel for
   Chapter 11 Debtor and Debtor In Possession,
8  NEUMEDICINES INC.

9

10          **UNITED STATES BANKRUPTCY COURT**

11      **CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

12

13  In re:                              Case No. 2:20-bk-16475-ER

14  NEUMEDICINES INC.                   Chapter 11

15                                      **MOTION APPROVING STIPULATION
          Debtor and Debtor In Possession.   FOR ENTRY OF ORDER AUTHORIZING
16                                      USE OF CASH COLLATERAL;
                                        DECLARATION OF TIMOTHY K.
17                                      GALLAHER**

18

19                                      Date:      September 2, 2020
                                        Time:      10:00 a.m.
20                                      Place:     Courtroom 1568
21                                                 U.S. Bankruptcy Court
                                                   255 E. Temple Street
22                                                 Los Angeles, CA 90012

23

24

25

26

27

28

**WEINTRAUB & SELTH, APC**
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

Neumedicines Inc., the Chapter 11 Debtor and Debtor in Possession ("Debtor"), in the pending Chapter 11 bankruptcy case identified as *In re Neumedicines Inc.*, Bankruptcy Case Number 2:20-bk-16475-ER ("Bankruptcy Case"), hereby moves this Court for an order ("Motion") approving the *Stipulation For Entry of Order Authorizing Use of Cash Collateral Liens* ("Stipulation") entered into with Mao Qun International ("MQ") and Elliot Friedman ("Mr. Friedman", collectively with MQ, "Secured Creditors"), a true copy which is attached as **Exhibit A** to the *Declaration of Crystle J. Lindsey*.

In support of the Motion, the Debtor represents as follows:

## I.

## INTRODUCTION

The Debtor[1] and Secured Creditors have stipulated to the Debtor's interim use of its cash collateral (as defined in the Bankruptcy Code Section 363(a)) through September 30, 2020 in accordance with the Budget in order to fund its reasonable and necessary operating expenses. The Debtor is currently interviewing potential investment bankers to market and sell its assets including its valuable patents. The Debtor estimates that its drug and research patents are valued at no less than $20 million. In order to maximize the full value of its assets and achieve the highest purchase price, the Debtor requires use of its Cash Collateral to fund its operations including maintenance of its patents and payment to consultants and specialists. Any disruption to its business, including preservations of its patents, will cause severe harm to the estate and creditor body. The Debtor therefore respectfully requests the Court grant the Motion and approve the Stipulation.

///
///
///
///
///

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning as in the Cash Collateral Motion to which this Memorandum of Points and Authorities is annexed.

3788.02

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

## II.

## BRIEF DESCRIPTION OF THE STIPULATION

The primary terms of the Stipulation are the following:[2]

- The Debtor shall be entitled to use the Cash Collateral in accordance with the Budget. The Debtor is authorized to make the expenditures provided for in the Budget and, if necessary, to exceed the amounts set forth in the Budget by fifteen percent (15%) of the Budget total. Any expenditures in excess of this authorization will require the written approval of both of the Secured Creditors. Any Budget savings may be carried over for use by the Debtor in subsequent periods;

- The Secured Creditors shall have and are hereby granted by the Debtor, effective as of the Petition Date, post-petition security interests and replacement liens pursuant to sections 361 and 363(e) of the Bankruptcy Code ("Post-petition Lien") in all of the Debtor's personal property and assets to the extent of any Cash Collateral used, with such liens being of the same extent, priority, and validity of the Secured Creditors' respective pre-petition Security Interests, provided however such replacement liens shall not extend to any avoiding power claims arising under the Bankruptcy Code. Under section 507(b) of the Bankruptcy Code, if the Post-petition Lien granted to either of the Secured Creditors is insufficient to satisfy in full the claims of that Secured Creditor (subject to the Debtor's right to object to or modify such claims), then that Secured Creditor will be granted an allowed claim under section 503(b) of the Bankruptcy Code in the amount of any such insufficiency. Such claim shall have the super-priority provided by section 507(b) of the Bankruptcy Code, and no claim for costs or expenses of administration that have been or may be incurred in the Bankruptcy case, any conversion of the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code, or otherwise, and no priority claims, are or will be senior to or on a parity with any such claim of the Secured Creditor, subject only to fees payable to the United States Trustee

---

[2] The following list of terms does not include all terms and provisions of the Stipulation. For a list of each term and provision of the Stipulation see Exhibit A.

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

under 28 U.S.C. § 1930, and fees or costs owing to the Clerk of the Court;

- Each Post-petition Lien shall be granted, attached, perfected, and validated by virtue of this Stipulation and the Order approving the same, without any further act required under federal, state, or local law requiring notice, filing, registration, recording, possession, or any other act to validate or perfect a security interest or lien; and

- The Debtor's use of Cash Collateral in accordance with the terms and conditions discussed herein shall terminate upon the earlier of (i) the end of the Budget period at 5:00 p.m. PT on September 30, 2020; or (ii) an "Event of Default" as defined in Paragraph 5, unless extended by further stipulation of the Parties or order of the Court.

### III.

### JURISDICTION

This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334.   This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### IV.

### GENERAL BACKGROUND

The Debtor commenced this Bankruptcy Case by filing an emergency  petition for relief under Chapter 11 of the Bankruptcy Code on July 17, 2020 (the "Petition Date").   The Debtor continues to carry out its business operations and manage its financial affairs as a Debtor in Possession pursuant to 11 U.S.C. §§ 1107 and 1108.  No trustee, examiner, or committee has been appointed in the Bankruptcy Case.

### V.

### STATEMENT OF FACTS

#### A.    History Of The Debtor And Its Business

The Debtor is a clinical-stage biopharmaceutical company founded in 2003 at the University of Southern California. The Debtor was founded by Lena A. Basile, Ph.D., J.D. ("Dr. Basile"), a biochemist and attorney, Timothy K. Gallaher, Ph.D. ("Dr. Gallaher"), also a biochemist, and Hebron H. Cheung, M.B.A., an accountant. Dr. Basile was the President of the Company since its formation.

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

The probate estate of Dr. Basile (deceased April 11, 2020) is the majority shareholder of the Debtor. Dr. Gallaher currently serves as President and Raphael Nir, Ph.D. serves as Chief Executive Officer. Both are also members of the board of directors.

The Debtor was founded to develop the recombinant drug, interleukin-12 ("IL-12"), for the treatment of cancer and acute radiation syndrome.  Due to its efficacy in both treating cancer and also the effects of radiation poisoning in the event of an attack on or accident threatening the U.S. population, the Debtor received grants and non-dilutive funding in excess of $76 million from the National Health Cancer Institute, the Biological Advanced Research Development Agency[3] ("BARDA"), a division of the Department of Health and Human Services ("HHS") and U.S. Army Medical Research Acquisition Activity. These funds have been expended on the study and development of IL-12, which is now in the human trials stage.

The Debtor owns valuable patents on its IL-12 drug HemaMaxTM, which has demonstrated anti-tumor effects and is being evaluated for use to generate sustained and durable anti-tumor responses. Pre-clinical and clinical results of HemaMax™ have been compelling and it is currently in Phase 3 of trials where it has safely and efficaciously been received and well tolerated in healthy subjects. Thus far, the trial tests have been conducted on 249 humans as well as mice, dogs, and monkeys. The Debtor is also is well down the path to receiving Priority Review Voucher ("PRV")[4] status from the Food and Drug Administration (which asset can be sold to another bio-pharma

_____

[3] BARDA, a part of the United States Department of Health and Human Services Office of the Assistant Secretary for Preparedness and Response, was established to aid in securing and protecting the U.S. population from chemical, biological, radiological, and nuclear (CBRN) threats, as well as from pandemic influenza and emerging diseases.

[4] The **priority review voucher** program or PRV is a program that grants a **voucher** to drug developers and bio-pharmaceutical companies which allows and provides for a significantly shorter review period of their research and drug development (hence, "priority review").  The development of new drugs is enormously costly and as a result, drug developers focus their efforts on diseases which have wide application in order to allow them to recover costs and get to profit.  The PRV voucher is as an incentive to develop treatments for "orphan diseases" or off hand conditions such as radiation counter measures, drugs that might otherwise not be profitable to develop because of a smaller pool of patients needing treatment.  The program significantly shortens the review period allowing the drug maker to get its product to market much sooner and can be worth billions of dollars to a drug maker. PRVs are transferrable and are sold with recent sales at approximately $80 million. The Debtor intends to sell its assets and is presently researching and interviewing investment banker candidates.  A buyer of the estate's assets would succeed to the Debtor's status in the PRV program.

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

company and has a recognizable and tradable market value).

**B.      The Debtor's Business Operations**

As a biopharmaceutical research and development company, the Debtor's operations do not generate revenue.  Instead, the Debtor historically has had two primary sources of income to fund its ongoing research and clinical trials.  First, the Debtor funds its operations through government funding, including receipt of a contract in 2008 and 2011 with BARDA which funded the early and advanced development of HemaMax™. Unfortunately, the Debtor's BARDA funding was terminated in 2017 after receiving approximately $76 million in contracts.  The Debtor is currently scheduled to receive a grant in the amount of $500,000 from the European Union, with funding expected in or around January 2021 at the earliest.  A buyer of the Debtor would presumably succeed to this grant.

The Debtor has also funded its operations through licensing agreement revenue, investment and loans, including an investment from Libo Pharma Corp. ("Libo"), a Taiwanese biopharmaceutical company.  On or around June 1, 2017, the Debtor and Libo entered into a licensing agreement whereby Libo licensed HemaMax™ for research in the treatment of diffuse large B-cell lymphoma. Libo has expressed interest in expanding its license for use of HemaMax™ in clinical trials in the United States and purchasing the Debtor.

The funding and grants received by the Debtor were expended on its research and development of HemaMax™.  The Debtor's operations do not generate continuous revenue and outside funding is critical to its operation.  It typical takes $1 billion to develop and advance a pharmaceutical drug; however, the Debtor achieved these results with less than $100 million in funding.

**D.      The Debtor's Secured Creditors**

The Debtor believes that Secured Creditors with liens in its assets total approximately $702,970. For ease of reference, all known Secured Creditors (as identified by filed financing statements), along with their asserted interests, are described in the chart below.

///

///

///

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

| Creditor Name | Description of Collateral | UCC-1 | Date UCC-1 Filed | Estimated Claim Amount |
|---|---|---|---|---|
| Mao Qun International Investment LLC ("MQ") | All assets of the Debtor | UCC-1 (x6953) (California | 08/16/2019 | $232,970 |
| Elliot Friedman ("Friedman") | All assets of the Debtor | UCC-1 (x7278) (California) | 10/01/2019 | $470,000 |
| | | | **Total** | **$702,970** |

## E.    The Debtor's Assets

While the Debtor's operations do not generate continuous revenue, its research and clinical operations have resulted in multiple drug and research patents registered in the United States, Canada, Japan, and Europe, which have significant value. Based on previous assessments by Libo and Friedman, who briefly served as the Debtor's President, the Debtor's valuation was placed at $110 million. The Debtor estimates that its research and drug patents alone are valued at no less than $20 million. Given the significant value of its intellectual property, the Debtor submits that the interests of Secured Creditors with valid liens in Cash Collateral, not subject to avoidance, are adequately protected by replacement liens in the Debtor's assets.

## F.    The Debtor's Future Plans

The Debtor is currently interviewing potential investment bankers to market and sell its assets including its valuable patents. In order to maximize the full value of its assets and achieve the highest purchase price, the Debtor requires use of its Cash Collateral to fund its operations including maintenance of its patents and payment to consultants and specialists. Any disruption to its business, including preservation of its patents, will cause severe harm to the estate and creditor body.

///

///

///

///

///

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

# VI.

## LEGAL AUTHORITY

The Debtor's use of property of the estate is governed by Section 363 of the Bankruptcy Code. Section 363(c)(2) provides in pertinent part:

> (2) The trustee may not use, sell, or lease <u>cash collateral</u> under paragraph (1) of this subsection unless—
>
> > (A) each entity that has an interest in such <u>cash collateral</u> consents; or
> >
> > (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).  All Secured Creditors have consented to the Debtor's interim use of Cash Collateral in accordance with the terms of the Stipulation.

Rule 4001(d)(1)(A) of the Federal Rules of Bankruptcy Procedure provides that:

> A motion for approval of any of the following shall be accompanied by a copy of the agreement and a proposed form of order:
>
> > (iv) an agreement to use cash collateral;

Further, Rule 4001(d)(1)(B) provides that:

> The motion shall consist of or (if the motion is more than five pages in length) begin with a concise statement of the relief requested, not to exceed five pages, that lists or summarizes, and sets out the location within the relevant documents of, all material provision of the agreement. . . . The motion shall also describe the nature and extent of each such provision.

FRCP Rule 4001(d).

Finally, Rule 4001(d) (3) provides that:

> If no objection is filed, the court may enter an order approving or disapproving the agreement without conducting a hearing.

FRCP Rule 4001(d).

The terms of the Stipulation are clearly set out here, and the Stipulation attached as **Exhibit A.** The terms of the Order reflecting the agreement of the parties are set out in the form of order attached as **Exhibit B.**

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

## VI.

## CONCLUSION

For the foregoing reasons, the Debtor respectfully requests that the Motion be granted, and that the Court approve the Stipulation between the Debtor and Secured Creditors (**Exhibit A**) and approve the attached Order (**Exhibit B**).

Dated:  August 5, 2020                                   **WEINTRAUB & SELTH, APC**

                                                    By:        */s/Crystle J. Lindsey*
                                                                Daniel J. Weintraub
                                                                James R. Selth
                                                                Crystle J. Lindsey
                                                                [Proposed] General Bankruptcy Counsel for
                                                                Chapter 11 Debtor and Debtor In Possession
                                                                NEUMEDICINES INC.

**WEINTRAUB & SELTH, APC**
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

## DECLARATION OF TIMOTHY K. GALLAHER

I, Timothy K. Gallaher, declare:

1.      I am an individual over the age of eighteen and President of Neumedicines Inc., the Chapter 11 Debtor and Debtor in Possession (the "Debtor") herein.  Each of the facts contained in this declaration is based upon my personal knowledge and, if called as a witness, I could and would competently testify thereto.

2.      The Debtor commenced this Bankruptcy Case by filing an emergency  petition for relief under Chapter 11 of the Bankruptcy Code on July 17, 2020 (the "Petition Date").   The Debtor continues to carry out its business operations and manage its financial affairs as a Debtor in Possession pursuant to 11 U.S.C. §§ 1107 and 1108.  No trustee, examiner, or committee has been appointed in the Bankruptcy Case.

### History Of The Debtor And Its Business

3.      The Debtor is a clinical-stage biopharmaceutical company founded in 2003 at the University of Southern California. The Debtor was founded by Lena A. Basile, Ph.D., J.D. ("Dr. Basile"), a biochemist and attorney, Timothy K. Gallaher, Ph.D. ("Dr. Gallaher"), also a biochemist, and Hebron H. Cheung, M.B.A., an accountant. Dr. Basile was the President of the Company since its formation. The probate estate of Dr. Basile (deceased April 11, 2020) is the majority shareholder of the Debtor. Dr. Gallaher currently serves as President and Raphael Nir, Ph.D. serves as Chief Executive Officer.  Both are also members of board of directors.

4.      The Debtor was founded to develop the recombinant drug, interleukin-12 ("IL-12"), for the treatment of cancer and acute radiation syndrome.  Due to its efficacy in both treating cancer and also the effects of radiation poisoning in the event of an attack on or accident threatening the U.S. population, the Debtor received grants and non-dilutive funding in excess of $76 million from the National Health Cancer Institute and the Biological Advanced Research Development Agency[5] ("BARDA"), a division of the Department of Health and Human Services ("HHS") and U.S. Army

---

[5] BARDA, a part of the United States Department of Health and Human Services Office of the Assistant Secretary for Preparedness and Response, was established to aid in securing and protecting the U.S. population from chemical, biological, radiological, and nuclear (CBRN) threats, as well as from pandemic influenza and emerging diseases.

Medical Research Acquisition Activity. These funds have been expended on the study and development of IL-12, which is now in the human trials stage.

5.    The Debtor owns valuable patents on its IL-12 drug HemaMaxTM, which has demonstrated anti-tumor effects and is being evaluated for use to generate sustained and durable anti-tumor responses. Pre-clinical and clinical results of HemaMax™ have been compelling and it is currently in Phase 3 of trials where it has safely and efficaciously been received and well tolerated in healthy subjects. Thus far, the trial tests have been conducted on 249 humans as well as mice, dogs, and monkeys. The Debtor is also is well down the path to receiving Priority Review Voucher ("PRV")[6] status from the Food and Drug Administration (which asset can be sold to another bio-pharma company and has a recognizable and tradable market value).

## The Debtor's Business Operations

6.    As a biopharmaceutical research and development company, the Debtor's operations do not generate revenue.  Instead, the Debtor historically has had two primary sources of income to fund its ongoing research and clinical trials.   First, the Debtor funds its operations through government funding, including receipt of a contract in 2008  and 2011 with BARDA which funded the early and advanced development of HemaMax™. Unfortunately, the Debtor's BARDA funding was terminated in 2017 after receiving approximately $76 million in contracts.   The Debtor is currently scheduled to receive a grant in the amount of $500,000 from the European Union, with funding expected in or around January 2021 at the earliest.  A buyer of the Debtor would presumably succeed to this grant.

7.    The Debtor has also funded its operations through licensing agreement revenue,

---

[6] The **priority review voucher** program or PRV is a program that grants a **voucher** to drug developers and bio-pharmaceutical companies which allows and provides for a significantly shorter review period of their research and drug development (hence, "priority review").  The development of new drugs is enormously costly and as a result, drug developers focus their efforts on diseases which have wide application in order to allow them to recover costs and get to profit.  The PRV voucher is as an incentive to develop treatments for "orphan diseases" or off hand conditions such as radiation counter measures, drugs that might otherwise not be profitable to develop because of a smaller pool of patients needing treatment.  The program significantly shortens the review period allowing the drug maker to get its product to market much sooner and can be worth billions of dollars to a drug maker. PRVs are transferrable and are sold with recent sales at approximately $80 million. The Debtor intends to sell its assets and is presently researching and interviewing investment banker candidates.  A buyer of the estate's assets would succeed to the Debtor's status in the PRV program.

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

investment and loans, including an investment from Libo Pharma Corp. ("Libo"), a Taiwanese biopharmaceutical company. On or around June 1, 2017, the Debtor and Libo entered into a licensing agreement whereby Libo licensed HemaMax™ for research in the treatment of diffuse large B-cell lymphoma. Libo has expressed interest in expanding its license for use of HemaMax™ in clinical trials in the United States and purchasing the Debtor.

8.    The funding and grants received by the Debtor were expended on its research and development of HemaMax™. The Debtor's operations do not generate continuous revenue and outside funding is critical to its operation. It typical takes $1 billion to develop and advance a pharmaceutical drug; however, the Debtor achieved  these results with less than $100 million in funding.

### The Debtor's Secured Creditors

9.    The Debtor believes that Secured Creditors with liens in its assets total approximately $702,970. For ease of reference, all known Secured Creditors (as identified by filed financing statements), along with their asserted interests, are described in the chart below.

| Creditor Name | Description of Collateral | UCC-1 | Date UCC-1 Filed | Estimated Claim Amount |
|---|---|---|---|---|
| Mao Qun International Investment LLC | All assets of the Debtor | UCC-1 (x6953) (California | 08/16/2019 | $232,970 |
| Elliot Friedman | All assets of the Debtor | UCC-1 (x7278) (California) | 10/01/2019 | $470,000 |
|  |  |  | Total | $702,970 |

### The Debtor's Assets

10.    While the Debtor's operations do not generate continuous revenue, its research and clinical operations have resulted in multiple drug and research patents registered in the United States, Canada, Japan, and Europe, which have significant value. Based on previous assessments by Libo and Friedman, who briefly served as the Debtor's President, the Debtor's valuation was placed at $110 million. The Debtor estimates that its research and drug patents alone are valued at no less than

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

1    $20 million. Given the significant value of its intellectual property, the Debtor submits that the

2    interests of Secured Creditors with valid liens in Cash Collateral, not subject to avoidance, are

3    adequately protected by replacement liens in the Debtor's assets.

**The Debtor's Future Plans**

5    11.    The Debtor is currently interviewing potential investment bankers to market and sell

6    its assets including its valuable patents. The Debtor estimates that its drug and research patents are

7    valued at no less than $20 million. In order to maximize the full value of its assets and achieve the

8    highest purchase price, the Debtor requires use of its Cash Collateral to fund its operations including

9    maintenance of its patents and payment to consultants and specialists. Any disruption to its business,

10    including preservation of its patents, will cause severe harm to the estate and creditor body. As a

11    result, it is in the best interest of the estate for the Debtor to use its Cash Collateral in accordance with

12    the Budget to pay necessary expenses and enter into the Cash Collateral Stipulation.

13    12.    In recognition of the foregoing, I authorized my counsel, Crystle J. Lindsey of

14    Weintraub & Selth, APC, to enter into the Cash Collateral Stipulation with Secured Creditors.

15    13.    The terms of the Cash Collateral Stipulation are reflected in the proposed Order

16    attached as **Exhibit B**.

17    I declare under penalty of perjury under the laws of the United States of America that

18    the foregoing is true and correct. Executed on August 5, 2020, at Arcadia, California.

Timothy K. Gallaher

19

20

21

22

23

24

25

26

27

28

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD, SUITE 1170
LOS ANGELES, CA 90025

3788.02    Motion for Order Approving Stipulation for Interim Use of Cash Collateral

# EXHIBIT "A"

1  Daniel J. Weintraub, State Bar No. 132111
   Crystle J. Lindsey, State Bar No. 281944
2  **WEINTRAUB & SELTH, APC**
   11766 Wilshire Boulevard, Suite 1170
3  Los Angeles, CA 90025
   Telephone:  (310) 207-1494
4  Facsimile:  (310) 442-0660
   Email: crystle@wsrlaw.net
5

6
   Proposed General Bankruptcy Counsel for
7  Chapter 11 Debtor and Debtor In Possession,
   NEUMEDICINES INC.
8

9

10                     **UNITED STATES BANKRUPTCY COURT**

11           **CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

12  In re:                                    Case No. 2:20-bk-16475-ER

13  NEUMEDICINES INC.                         Chapter 11

14
          Debtor and Debtor In Possession.    **STIPULATION FOR ENTRY OF**
15                                            **ORDER AUTHORIZING USE OF CASH**
                                              **COLLATERAL**
16

17

18

19         Neumedicines Inc., the Chapter 11 Debtor and Debtor in Possession (the "Debtor") in the

20  Chapter 11 bankruptcy case identified as *In re Neumedicines Inc.*, Bankruptcy Case Number 2:20-

21  bk-16475-ER (the "Bankruptcy Case"), Mao Qun International Investment LLC ("MQ"), and Elliot

22  Friedman   ("Friedman") (collectively, with MQ, the "Secured Creditors") hereby enter into this

23  *Stipulation For Entry Of Order Authorizing Use Of Cash Collateral* (the "Stipulation") and

24  respectfully represent as follows:

25                                    **RECITALS**

26         A.     On July17, 2020 (the "Petition Date"), the Debtor filed a voluntary bankruptcy petition

27                under Chapter 11 of Title 11 of the United States Code (beginning at 11 U.S.C. §§ 101,

28                *et seq.*, the "Bankruptcy Code") in the above-captioned court, initiating the Bankruptcy

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

-1-

Case.

B.    Prior to the Petition Date, the Debtor secured its trade payables (the "Nitto Payables") to Nitto Avecia Pharma Services with a blanket security interest in all the Debtor's assets, which was perfected by the filing of a UCC-1 Financing Statement with the California Secretary of State as Filing Number 19-7728596953 on August 16, 2019 (the "MQ Security Interest") . The Nitto Payables in the principal amount of $232,970.65 were subsequently purchased by MQ and all of the rights associated with the Nitto Payables were assigned to MQ (the "MQ Security Interest"), .

C.    Also prior to the Petition Date, the Debtor entered into a Secured Convertible Promissory Note Purchase Agreement with Friedman (the "Friedman Note").    The Friedman Note grants Friedman a blanket security interest in all the Debtor's assets, which was perfected by a UCC-1 Financing Statement filed with the California Secretary of State as Filing Number 19-7739127278 on October 1, 2019 (collectively with the MQ Security interest, the "Security Interests").

D.    The Debtor requires the use of Cash Collateral (as defined in Bankruptcy Code Section 363(a)) to fund its reasonable and necessary operating expenses.    The Debtor has advised that it is currently interviewing investment bankers to market and sell its assets. The Secured Creditors (collectively, with the Debtor, the "Parties", and each individually, a "Party") consent to the Debtor's use of Cash Collateral subject to the conditions set forth in this Stipulation.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE PARTIES AS FOLLOWS:**

**STIPULATION**

1.    Incorporation of Recitals. The Recitals set forth above are incorporated herein by this reference and shall be deemed a material part of this Resolution Stipulation.

2.    Authorization for Limited Use of Cash Collateral. Subject to the terms and conditions of this Stipulation, the Debtor shall be entitled to use the Cash Collateral in accordance with the budget attached as **Exhibit "1"** hereto (the "Budget"). The Debtor is authorized to make

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

the expenditures provided for in the Budget and, if necessary, to exceed the amounts set forth in the Budget by fifteen percent (15%) of the Budget total. Any expenditures in excess of this authorization will require the written approval of both of the Secured Creditors. Any Budget savings may be carried over for use by the Debtor in subsequent periods.

3.    Post-Petition Replacement Liens.

a.    Grant of Post-Petition Replacement Liens. The Secured Creditors shall have and are hereby granted by the Debtor, effective as of the Petition Date, post-petition security interests and replacement liens pursuant to sections 361 and 363(e) of the Bankruptcy Code ("Post-petition Lien") in all of the Debtor's personal property and assets to the extent of any Cash Collateral used, with such liens being of the same extent, priority, and validity of the Secured Creditors' respective pre-petition Security Interests, provided however such replacement liens shall not extend to any avoiding power claims arising under the Bankruptcy Code. Under section 507(b) of the Bankruptcy Code, if the Post-petition Lien granted to either of the Secured Creditors is insufficient to satisfy in full the claims of that Secured Creditor (subject to the Debtor's right to object to or modify such claims), then that Secured Creditor will be granted an allowed claim under section 503(b) of the Bankruptcy Code in the amount of any such insufficiency.  Such claim shall have the super-priority provided by section 507(b) of the Bankruptcy Code, and no claim for costs or expenses of administration that have been or may be incurred in the Bankruptcy case, any conversion of the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code, or otherwise, and no priority claims, are or will be senior to or on a parity with any such claim of the Secured Creditor, subject only to fees payable to the United States Trustee under 28 U.S.C. § 1930, and fees or costs owing to the Clerk of the Court.

b.    Automatic Perfection of Post-Petition Liens. Each Post-petition Lien shall be granted, attached, perfected, and validated by virtue of this Stipulation and the Order approving the same, without any further act required under federal, state, or local law requiring notice, filing, registration, recording, possession, or any other act to validate or perfect a security interest or lien.

4.    Termination. The Debtor's use of Cash Collateral in accordance with the terms and conditions discussed herein shall terminate upon the earlier of (i) the end of the Budget period

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

-3-

at 5:00 p.m. PT on September 30, 2020; or (ii) an "Event of Default" as defined in Paragraph 5, unless extended by further stipulation of the Parties or order of the Court.

5.    Event of Default. An event of default under this Stipulation (each, a "Default"), shall include the following:

a.    The Debtor's failure to perform or comply with any of the terms, conditions, or covenants of this Stipulation (the "Curable Defaults");

b.    The termination of this Stipulation by its own terms, operation of law, or Court order;

c.    The dismissal of the Bankruptcy Case;

d.    The appointment of a trustee under the Bankruptcy Code; or

e.    The conversion of the Bankruptcy Case to a case under another chapter of the Bankruptcy Code.

6.    Effect of Default.

a.    Notice of Default. The use of cash collateral shall be terminated immediately upon the occurrence of any Default which is not a Curable Default.  With respect to any Curable Default, any Secured Creditor seeking to pursue its remedies following a Default will provide the Debtor with written notice of any Default via email to the Debtor's counsel of record in the Bankruptcy Case (the "Notice of Default").

b.    Cure of Curable Defaults. With respect to Curable Defaults, the Debtor shall have fifteen (15) calendar days from the date of service of Notice of the Default to cure such Default and, if it does so, the Default is voided, and the Debtor may then be allowed to use Cash Collateral under the terms and conditions set forth in this Stipulation, and as provided in the Budget.  The foregoing shall be without prejudice to the rights of a Secured Creditor to provide notice of any other Default.

c.    Rights Upon Default. Immediately following the occurrence of a Default other than a Curable Default, or in the event the Debtor does not cure any Curable Default following receipt of the Notice of Default and expiration of the cure period specified in section 6.b above, the Debtor must cease all use of Cash Collateral for any purpose whatsoever. Immediately

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

upon Default, and subject only to voiding the Default within fifteen (15) calendar days, as set forth in paragraph 6.b, all of the following shall be deemed to have occurred:

      i.   The consent of the Secured Creditor who issued the Notice of Default is terminated without further notice as to the Debtor's use of Cash Collateral;

      ii.   The Debtor shall not use any Cash Collateral for any purpose; and

      iii.   The Debtor shall segregate all Cash Collateral in its possession or to come into its possession in the future;

7.    <u>Notice</u>.  When notice is required in this Stipulation, it shall be delivered or served upon the Parties as follows:

| | |
|---|---|
| **If to the Debtor**: | Timothy Gallaher<br>Neumedicines Inc.<br>480 W. Norman Ave.<br>Arcadia, CA 91007 |
| - with a copy to - | Crystle J. Lindsey<br>Weintraub & Selth, APC<br>11766 Wilshire Boulevard, Suite 1170<br>Los Angeles, CA 90025<br>crystle@wsrlaw.net |
| **If to Mao Qun International Investment LLC**: | Michael Lubic<br>K&L Gates LLP<br>10100 Santa Monica Blvd., Suite 800<br>Los Angeles, CA 90064<br>michael.lubic@klgates.com |
| **If to Elliot Friedman**: | David Kupetz<br>SulmeyerKupetz<br>333 South Grand Ave., Suite 3400<br>Los Angeles, CA 90071<br>dkupetz@sulmeyerlaw.com |

8.    <u>Binding Effect</u>.  This Stipulation shall be binding upon the Parties and their respective successors and assigns, including any trustee appointed in the Bankruptcy Case or any subsequently converted bankruptcy case of the Debtor. This Stipulation shall also inure to the benefit of the Parties and their respective successors and assigns.

9.    <u>Extension</u>.  Notwithstanding the occurrence of the Termination Date or a Default, this Stipulation may be extended by written agreement between the Parties without further order of

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

1   this Court.

2       10.      <u>Jointly Negotiated Stipulation</u>. This Stipulation is the product of negotiation

3   between the Parties hereto and represents the joint, conceived, bargained-for and agreed upon

4   language mutually determined by the Parties to express their intentions in entering into this

5   Stipulation. Any ambiguity or uncertainty herein shall be deemed to be caused by, or attributable to,

6   all Parties collectively. In any action to enforce or interpret this Stipulation, it shall be construed in

7   a neutral manner and no term or condition herein shall be construed more or less favorably to any

8   one Party or groups of Parties. Each Party will act in good faith in the performance of its

9   obligations hereunder.

10      11.      <u>Counterparts</u>. This Stipulation may be executed in counterparts, which taken

11  together shall be considered a single document. In addition, facsimile or Portable Document Format

12  (PDF) signatures shall be treated as original signatures.

13      12.      <u>Consent to Entry of Order</u>.   The Parties each consent to entry of an order

14  approving this Stipulation.

15      13.      <u>Time of the Essence</u>.  Each of the Parties expressly acknowledges and agrees that

16  time is of the essence and that all dates and time periods provided for in this Stipulation are absolute

17  and final.

18

19  Dated: July 31, 2020                          WEINTRAUB & SELTH, APC

20                                  By

21                                         Daniel J. Weintraub
                                           Crystle J. Lindsey
22                                         [Proposed] General Bankruptcy Counsel for
                                           Chapter 11 Debtor and Debtor In Possession
23                                         NEUMEDICINES INC.

24

25  Dated: July 31, 2020                          K&L GATES LLP

26                                  By

27                                         Michael B. Lubic
                                           Attorneys for Mao Qun International
28                                         Investment LLC

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  July 28, 2020

**SULMEYER KUPETZ**

By _David Kupetz_

David S. Kupetz
Attorneys for Elliot Friedman

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

3788.01          STIPULATION AUTHORIZING USE OF CASH COLLATERAL

# EXHIBIT "1"

| | $ 44,042.00 | $ 44,074.00 | $ 44,104.00 |
|---|---|---|---|
| | **07/17-31/20** | **8/1-31020** | **9/1-30/20** |

**Estimated Income/Revenue:**

| | | | |
|---|---|---|---|
| **TOTAL INCOME** | $ - | $ - | $ - |
| **COGS** | $ - | $ - | $ - |
| **Gross Income** | $ - | $ - | $ - |

**Operating Expenses:**

| | | | |
|---|---|---|---|
| Consulting for CMC & Clinical Research | $ - | $ 4,000.00 | 4,000.00 |
| Payroll & Payroll Taxes | $ - | $ 2,500.00 | - |
| Storage - Documents and Data | $ - | $ 200.00 | $ 200.00 |
| Storage - Cell line at BioReliance | $ - | $ 7,194.00 | 6,729.00 |
| Storage- Drug - TCG | $ 2,000.00 | $ - | $ - |
| Payroll Service | $ 900.00 | $ 100.00 | $ 120.00 |
| Bank Charges | $ 30.00 | $ 30.00 | $ 30.00 |
| Insurance Premium - Liability | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 |
| IP maintenance - CPA Global & WSGR & Legal | $ 3,218.25 | $ 7,000.00 | 7,000.00 |
| Computer Services | $ 720.00 | $ 720.00 | 720.00 |
| Google Email | $ 228.00 | $ 228.00 | 228.00 |
| Credit Card (min payment) | $ 1,400.00 | $ 1,400.00 | 1,400.00 |
| CMC subcontractor | $ 2,313.00 | $ 1,500.00 | 1,500.00 |
| Miscellaneous, Postage & Rental for mail box etc. | $ 112.00 | $ 250.00 | 250.00 |

| | | | |
|---|---|---|---|
| **TOTAL OPERATING EXPENSES** | $ 11,921.25 | $ 26,122.00 | $ 23,177.00 |
| - | | | |
| Cash Flow | **-$11,921.25** | **-$26,122.00** | **-$23,177.00** |
| Beginning Cash | $58,971.12 | $47,049.87 | $20,927.87 |
| Ending Cash | $47,049.87 | $20,927.87 | -$2,249.13 |

# EXHIBIT "B"

Daniel J. Weintraub, State Bar No. 132111
James R. Selth, State Bar No. 123420
Crystle J. Lindsey, State Bar No. 281944
**WEINTRAUB & SELTH, APC**
11766 Wilshire Boulevard, Suite 1170
Los Angeles, CA 90025
Telephone: (310) 207-1494
Facsimile:  (310) 442-0660
Email: crystle@wsrlaw.net

[Proposed] General Bankruptcy Counsel for
Chapter 11 Debtor and Debtor In Possession,
NEUMEDICINES INC.

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No. 2:20-bk-16475-ER |
| NEUMEDICINES INC. | Chapter 11 |
| Debtor and Debtor In Possession. | **ORDER GRANTING MOTION APPROVING STIPULATION FOR ENTRY OF ORDER AUTHORIZING USE OF CASH COLLATERAL** |

The Court, having considered the Notice of Motion and Motion for Order Approving *Stipulation For Entry Of Order Authorizing Use Of Cash Collateral* (the "Stipulation", Dkt. No. 15) between Neumedicines Inc., the Chapter 11 Debtor and Debtor in Possession (the "Debtor"), Mao Qun International Investment LLC ("MQ"), and Elliot Friedman  ("Friedman") (collectively, with MQ, the "Secured Creditors"), each by and through their respective counsel, and for good and sufficient cause appearing therefor,

**IT IS HERBY ORDERED THAT:**

1.        The Stipulation is **APPROVED**;

2.        Incorporation of Recitals.  The Recitals set forth in the Stipulation are incorporated by reference and shall be deemed a material part of the Stipulation.

-1-

3. <u>Authorization for Limited Use of Cash Collateral</u>. Subject to the terms and conditions of this Stipulation, the Debtor shall be entitled to use the Cash Collateral in accordance with the budget attached as **Exhibit 1** to the Stipulation. The Debtor is authorized to make the expenditures provided for in the Budget and, if necessary, to exceed the amounts set forth in the Budget by fifteen percent (15%) of the Budget total. Any expenditures in excess of this authorization will require the written approval of both of the Secured Creditors. Any Budget savings may be carried over for use by the Debtor in subsequent periods.

3. <u>Post-Petition Replacement Liens</u>.

a. <u>Grant of Post-Petition Replacement Liens</u>. The Secured Creditors shall have and are hereby granted by the Debtor, effective as of the Petition Date, post-petition security interests and replacement liens pursuant to sections 361 and 363(e) of the Bankruptcy Code ( "<u>Post-petition Lien</u>") in all of the Debtor's personal property and assets to the extent of any Cash Collateral used, with such liens being of the same extent, priority, and validity of the Secured Creditors' respective pre-petition Security Interests, provided however such replacement liens shall not extend to any avoiding power claims arising under the Bankruptcy Code. Under section 507(b) of the Bankruptcy Code, if the Post-petition Lien granted to either of the Secured Creditors is insufficient to satisfy in full the claims of that Secured Creditor (subject to the Debtor's right to object to or modify such claims), then that Secured Creditor will be granted an allowed claim under section 503(b) of the Bankruptcy Code in the amount of any such insufficiency. Such claim shall have the super-priority provided by section 507(b) of the Bankruptcy Code, and no claim for costs or expenses of administration that have been or may be incurred in the Bankruptcy case, any conversion of the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code, or otherwise, and no priority claims, are or will be senior to or on a parity with any such claim of the Secured Creditor, subject only to fees payable to the United States Trustee under 28 U.S.C. § 1930, and fees or costs owing to the Clerk of the Court.

b. <u>Automatic Perfection of Post-Petition Liens</u>. Each Post-petition Lien shall be granted, attached, perfected, and validated by virtue of this Stipulation and the Order approving the same, without any further act required under federal, state, or local law requiring notice, filing,

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

registration, recording, possession, or any other act to validate or perfect a security interest or lien.

4.      <u>Termination</u>. The Debtor's use of Cash Collateral in accordance with the terms and conditions discussed herein shall terminate upon the earlier of (i) the end of the Budget period at 5:00 p.m. PT on September 30, 2020; or (ii) an "Event of Default" as defined in Paragraph 5, unless extended by further stipulation of the Parties or order of the Court.

5.      <u>Event of Default</u>. An event of default under this Stipulation (each, a "<u>Default</u>"), shall include the following:

a.      The Debtor's failure to perform or comply with any of the terms, conditions, or covenants of this Stipulation (the "Curable Defaults");

b.      The termination of this Stipulation by its own terms, operation of law, or Court order;

c.      The dismissal of the Bankruptcy Case;

d.      The appointment of a trustee under the Bankruptcy Code; or

e.      The conversion of the Bankruptcy Case to a case under another chapter of the Bankruptcy Code.

6.      <u>Effect of Default</u>.

a.      <u>Notice of Default</u>. The use of cash collateral shall be terminated immediately upon the occurrence of any Default which is not a Curable Default.  With respect to any Curable Default, any Secured Creditor seeking to pursue its remedies following a Default will provide the Debtor with written notice of any Default via email to the Debtor's counsel of record in the Bankruptcy Case (the "<u>Notice of Default</u>").

b.      <u>Cure of Curable Defaults</u>. With respect to Curable Defaults, the Debtor shall have fifteen (15) calendar days from the date of service of Notice of the Default to cure such Default and, if it does so, the Default is voided, and the Debtor may then be allowed to use Cash Collateral under the terms and conditions set forth in this Stipulation, and as provided in the Budget.  The foregoing shall be without prejudice to the rights of a Secured Creditor to provide notice of any other Default.

c.      <u>Rights Upon Default</u>. Immediately following the occurrence of a Default

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

other than a Curable Default, or in the event the Debtor does not cure any Curable Default following receipt of the Notice of Default and expiration of the cure period specified in section 6.b above, the Debtor must cease all use of Cash Collateral for any purpose whatsoever. Immediately upon Default, and subject only to voiding the Default within fifteen (15) calendar days, as set forth in paragraph 6.b, all of the following shall be deemed to have occurred:

    i.   The consent of the Secured Creditor who issued the Notice of Default is terminated without further notice as to the Debtor's use of Cash Collateral;

    ii.   The Debtor shall not use any Cash Collateral for any purpose; and

    iii.   The Debtor shall segregate all Cash Collateral in its possession or to come into its possession in the future;

7.    <u>Notice</u>.  When notice is required in this Stipulation, it shall be delivered or served upon the Parties as follows:

**If to the Debtor**:

Timothy Gallaher
Neumedicines Inc.
480 W. Norman Ave.
Arcadia, CA 91007

- with a copy to -

Crystle J. Lindsey
Weintraub & Selth, APC
11766 Wilshire Boulevard, Suite 1170
Los Angeles, CA 90025
crystle@wsrlaw.net

**If to Mao Qun International Investment LLC**:

Michael Lubic
K&L Gates LLP
10100 Santa Monica Blvd., Suite 800
Los Angeles, CA 90064
michael.lubic@klgates.com

**If to Elliot Friedman**:

David Kupetz
SulmeyerKupetz
333 South Grand Ave., Suite 3400
Los Angeles, CA 90071
dkupetz@sulmeyerlaw.com

8.    <u>Binding Effect</u>.  This Stipulation shall be binding upon the Parties and their respective successors and assigns, including any trustee appointed in the Bankruptcy Case or any subsequently converted bankruptcy case of the Debtor. This Stipulation shall also inure to the

WEINTRAUB & SELTH, APC
11766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

benefit of the Parties and their respective successors and assigns.

9.      **Extension**.  Notwithstanding the occurrence of the Termination Date or a Default, this Stipulation may be extended by written agreement between the Parties without further order of this Court.

10.     **Jointly Negotiated Stipulation**. This Stipulation is the product of negotiation between the Parties hereto and represents the joint, conceived, bargained-for and agreed upon language mutually determined by the Parties to express their intentions in entering into this Stipulation. Any ambiguity or uncertainty herein shall be deemed to be caused by, or attributable to, all Parties collectively. In any action to enforce or interpret this Stipulation, it shall be construed in a neutral manner and no term or condition herein shall be construed more or less favorably to any one Party or groups of Parties. Each Party will act in good faith in the performance of its obligations hereunder.

11.     **Counterparts**. This Stipulation may be executed in counterparts, which taken together shall be considered a single document. In addition, facsimile or Portable Document Format (PDF) signatures shall be treated as original signatures.

12.     **Consent to Entry of Order**.  The Parties each consent to entry of an order approving this Stipulation.

13.     **Time of the Essence**.  Each of the Parties expressly acknowledges and agrees that time is of the essence and that all dates and time periods provided for in this Stipulation are absolute and final.

###

**WEINTRAUB & SELTH, APC**
17766 WILSHIRE BLVD., SUITE 1170
LOS ANGELES, CA 90025

3788.01          Order Approving Stipulation Authorizing Use of Cash Collateral

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

11766 Wilshire Blvd., Suite 1170, Los Angeles, CA 90025

A true and correct copy of the foregoing document entitled ***Motion Approving Stipulation for Entry of Order Authorizing Use of Cash Collateral; Declaration of Timothy K. Gallaher*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 5, 2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On **August 5, 2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 5, 2020 | Gabby Piceno | /s/ Gabby Piceno |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**

# <u>ADDITIONAL SERVICE INFORMATION (if needed):</u>

1. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**</u>

<u>ON BEHALF OF ELLIOT FRIEDMAN</u> David S Kupetz    dkupetz@sulmeyerlaw.com,
dperez@sulmeyerlaw.com;dperez@ecf.courtdrive.com;dkupetz@ecf.courtdrive.com

<u>ON BEHALF OF DEBTOR</u> Crystle Jane Lindsey    crystle@wsrlaw.net,
crystle@cjllaw.com;gabby@wsrlaw.net;eduardo@wsrlaw.net

<u>ON BEHALF OF LIBO PHARMA CORP</u>. Michael B Lubic    michael.lubic@klgates.com,
jonathan.randolph@klgates.com

<u>ON BEHALF OF DEBTOR</u> jim@wsrlaw.net,
jselth@yahoo.com;eduardo@wsrlaw.net;gabby@wsrlaw.net;vinnet@ecf.inforuptcy.com

<u>OUST</u> United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

<u>ON BEHALF OF DEBTOR</u> dan@wsrlaw.net,
vinnet@ecf.inforuptcy.com;gabby@wsrlaw.net;eduardo@wsrlaw.net

<u>ON BEHALF OF OUST</u> Hatty K Yip    hatty.yip@usdoj.gov, hatty.k.yip@usdoj.gov

**2. <u>TO BE SERVED BY UNITED STATES MAIL</u>:**

<u>JUDGE</u>: Hon. Ernest M. Robles, Edward R. Roybal Federal Building and Courthouse, 255 E. Temple Street, Suite 1560, Los Angeles, CA 90012

<u>DEBTOR</u>: Neumedicines, Inc., c/o Timothy Gallaher, 480 W. Norman Ave., Arcadia, CA 91007

| TWENTY LARGEST UNSECURED CREDITORS | | |
|---|---|---|
| Business Card Services<br>PO BOX 23066<br>Columbus, GA 37902-3066 | Christopher E. Lawrence<br>156 Lombard St, #24<br>San Francisco, CA 94111 | Wilson Sonsini Goodrich & Rosati<br>650 Page Mill Road<br>Palo Alto, CA 94304-1050 |
| Estate of Lena A. Basile<br>10426 Helendale Ave.<br>Tujunga, CA 91042 | Foley & Lardner LLP<br>555 South Flower ST, #4400<br>Los Angeles, CA 90071-2411 | Ground Zero Pharmaceuticals, Inc.<br>5405 Alton Parkway, Suite A-464<br>Irvine, CA 92604 |
| Hebron Cheung<br>2724 Healther Heights Ave<br>Arcadia, CA 91006 | Hue Kha<br>13235 Elmrock Ave.<br>Moorpark, CA 93021 | Jamie Tom<br>PO BOX 66053<br>Arcadia, CA 91066 |
| Labyrinth Strategic<br>173 Highland Place<br>Monrovia, CA 91016 | Libo Pharma<br>10F, No 27-8, Sec.2, Zhongzheng E.<br>Tamsui Dist, New Taipei City 251,<br>TAIWAN | Siegfried Irvine<br>9342 Jeronimo Road<br>Irvine, CA 92618 |
| Outcome Capital<br>11921 Freedom Dr. Ste 730<br>Reston, VA 20190 | Scott Buckel<br>8926 Glacier Ave<br>Texas City, TX 77591 | The Trustees of Columbia University<br>c/o Clinical Trials Office<br>PO BOX 26453<br>New York, NY |
| Stanford University<br>PO BOX 44253<br>San Francisco, CA 94144-4253 | Summit Analytical, LLC<br>8354 Northfield Blvd, Blvd G,<br>Suite 3700<br>Denver, CO 80238 | |

| SECURED CREDITORS | | |
|---|---|---|
| Elliot Friedman<br>717 W. Olympic Blvd, Suite 2007<br>Los Angeles, CA 90015 | Mao Qun Int'l. Investment LLC<br>1F, No 22-2 Ln.189, Sec.1, Chengtai<br>Rd, Wugu Dist. , New Taipei<br>TAIWAN | |